OPINION OF THE COURT
Herbert I. Altman, J.
The following constitutes the opinion, decision, and order of the court.
The defendant is accused of three counts of criminal possession of a weapon in the fourth degree (Penal Law, § 265.01), a class A misdemeanor. The charge is that on May 13, 1979 the defendant unlawfully possessed a .357 caliber Magnum revolver loaded with six live bullets, a .38 caliber automatic pistol loaded with five live bullets and a .25 caliber automatic pistol loaded with seven live bullets in his Manhattan apartment.
Solely for the purposes of deciding the present motion, the defendant has stipulated that he was in possession of the stated loaded firearms in his apartment at the time in question.
*694 The defendant has moved the court to dismiss the charges against him on the ground that, as a matter of law, he is exempt from prosecution under section 265.01 of the Penal Law by virtue of the express legislative exemption to this statute set forth in section 265.20 (subd a, par 11) of the Penal Law. That paragraph provides that section 265.01 of the Penal Law does not apply to "[possession of a pistol or revolver by a police officer or sworn peace officer of another state while conducting official business within the state of New York.”
For the purpose of determining the merits of the defendant’s motion I conducted a fact-finding hearing on August 7, 1979, with the consent of both parties.
The defendant and his uncle, Henry Kalinowski, Sheriff of Wayne County, Pennsylvania, were the only witnesses who testified. I found their testimony to be credible.
THE FACTS
The defendant resides in Greenwich Village, Manhattan. He spends approximately 25 to 50% of his time in Pennsylvania, where he has rented quarters in Paupack Township. In 1977 the defendant was duly appointed Deputy Sheriff of Wayne County by his uncle, the Sheriff of that County. As Deputy Sheriff, the defendant has been delegated the task by his uncle of executing warrants for unpaid fines imposed by the Wayne County authorities upon New York City and Long Island residents for illegally camping on private property. Most of the fines involved range in amounts from $25 to $75. The defendant successfully executes approximately 20 of these warrants per year, receiving payment in full satisfaction of the fine. The defendant earns approximately $500 per year for the services he renders to Wayne County, being paid an hourly fee for the time expended executing the warrants plus expenses.
In truth, the defendant’s law enforcement activities as Deputy Sheriff may be termed his avocation, as he is gainfully employed on a full-time basis as a salesman for an electronics firm in New Jersey at an annual salary of approximately $18,000. Having no fixed hours for the performance of his fine-collecting duties, the defendant often manages to structure his workday to enable him to execute warrants in between his sales of electronics equipment.
The three loaded firearms that are the gravamen of the *695 charges against the defendant are the property of Wayne County. They were issued to defendant by his uncle, the Sheriff of Wayne County, for the purpose of performing his duties as Deputy Sheriff. Although the defendant has never met with physical resistance of any kind in the course of executing the warrants upon New York scofflaws, he maintains that the nature of his task makes it advisable that he be armed. The defendant has in fact never drawn his firearm while executing such a warrant. On those days when he plans to supplement his electronics salesmanship with "official business”, the defendant carries a weapon throughout the entire day.
THE LAW
In interpreting the scope of the exemption provided by section 265.20 (subd a, par 11) of the Penal Law, section 5.00 of the Penal Law requires that I not construe that statute "strictly”, but instead construe it according to the fair import of its terms "to promote justice and effect the objects of the law.” Although a literal reading of the provision in issue might seem to extend the breadth of its exemption to the status and activities of the defendant at bar, I find that such a construction would in fact do violence to the objectives and plain language of the Legislature in enacting laws prohibiting possession of firearms in the public interest. The seriousness of the danger posed by construing the statute to legitimize the possession by the defendant of the firearms in issue is graphically demonstrated by the fact that the impetus for the present prosecution was provided by the complaint of another person residing at the same address, who alleged that the defendant had pointed his .25 caliber automatic pistol at him and threatened to kill him.
An examination of the legislative history of the section reveals that its sponsor, Senator Dale M. Volker, in a memorandum in support of its enactment, stated that it was designed to permit possession of firearms by out-of-State police officers and sworn peace officers, who "regularly come into the State for purposes of extradition, serving process and as aides to officials of their own states” (Memorandum of Senator Volker, NY Legis Ann, 1976, p 39).
The Practice Commentary to this provision sheds light on the issue of the proper construction to be placed on the statute. It attributes a more specific and limited legislative *696 goal to its passage, as follows: "The purpose of the enactment was to enable the bodyguards accompanying some visiting governors to the national political convention in New York City in July 1976 to carry their weapons.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 265.20, 1978-1979, Pocket Part, p 194.)
The present controversy was in fact presaged with striking accuracy in the Practice Commentary’s critique of the statute: "As written, paragraph 11 contains considerable potential for abuse. In extending the exemption to 'official business’, it fails to define the scope of such activity. For example, is a police officer from a rural midwestern town vacationing in New York City, authorized to carry a gun simply because his friendly chief has accommodatingly assigned him the 'official business’ of studying the prostitution problem in Times Square?” (p 194.)
It is not necessary in this case to answer the rhetorical question posed by the commentator. By its clear terms, the statutory exemption applies only to police officers or sworn peace officers of other States "while conducting official business within the state of New York” (emphasis supplied). The defendant was not conducting official business in his residence at the time in question.
The clear legislative intention is that the exemption apply to police or peace officers from another State who come into this State for some official purpose and only during the course of that official purpose. It strains both credulity and the language of the statute to argue, as does defendant, that he is authorized to possess an assortment of dangerous weapons in the State of New York, at all times, because he sporadically engages in the collection of minor fines for Wayne County.
The statute may well authorize the Sheriff of Wayne County to send an armed police or peace officer into this State on official business for a limited purpose and a limited period of time. However, it does not authorize that Sheriff to deputize a New York resident to act as a fine collector from time to time while acting as an unlicensed gun collector all of the time.
Accordingly, defendant’s motion to dismiss the charges against him is denied.